**Sarah S. PIPPIN, Plaintiff,**

v.

**Elliott RICHARDSON, Secretary of Health, Education, and Welfare Department, Social Security Administration, Defendant.**

**Civ. No. 71–502.**

United States District Court,
M. D. Florida,
Tampa Division.

Sept. 29, 1972.

---

41. Lanasse v. Travelers Insurance Co., 450 F.2d 580 (CA5–1971).

John S. Wagstaff of Phillips, McFarland, Gould & Korones, P. A., Clearwater, Fla., for plaintiff.

John L. Briggs, U. S. Atty., by Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla. (Charles Settle, Chief, Hospital Insurance Benefits, Edwin Weiss, Attorney Advisor, Social Security Division, Office of General Counsel, Dept. of Health, Education & Welfare, of counsel, Baltimore, Md.), for defendant.

## ORDER

KRENTZMAN, District Judge.

This is an action brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration Appeals Council, which denied plaintiff's claim for certain Medicare benefits.

After a short stay at a hospital, plaintiff was transferred to the University Park Convalescent Center on June 23, 1969, to receive continued treatment for her diagnosed interscapular pain and arteriosclerosis. Plaintiff remained at the nursing home until September 11, 1969. Shortly before leaving the nursing home, plaintiff's husband was notified by the Social Security Administration that claimant's admission to the nursing home was not covered under the hospital insurance program (Medicare) and that no claims would be paid for the period after July 1, 1969. After repeated refusals to allow the claim, the Administration appointed a hearing examiner to take testimony and evidence from the physicians familiar with the case and from nursing home personnel. On December 21, 1970, the hearing examiner found that plaintiff was entitled to the Medicare benefits.

On its own motion, the Appeals Council of the Administration considered the case, and reversed the findings of the hearing examiner. The Council held that plaintiff was not entitled to have hospital benefits paid on her behalf to the nursing home for services provided during her stay, because the services were not "extended care services" as defined by 42 U.S.C. § 1395x(h), but instead constituted "custodial care" and therefore were excluded from coverage under § 1395y(a)(9).

The scope of judicial review of the Appeals Council is defined in 42 U.S.C. § 405(g). This Court must determine whether the decision of the Appeals Council was supported by substantial evidence. The parties have submitted this issue to the Court on defendant's motion for summary judgment. Summary judgment is not the proper procedure in this action, because the applicable statute limits its judicial review to a consideration of only the pleadings and the transcript of the record. Baker v. Richardson, 327 F. Supp. 349 (M.D.Fla.1971). Pursuant to the statute, the Court has considered the pleadings and the transcript and has determined that the Appeals Council decision was not supported by substantial evidence and must be reversed.

Under the Medicare Act, provision is made for post-hospital extended care benefits in order to defray the high costs of medical care. "Care in an extended care facility will frequently represent the next appropriate step after the intensive care furnished in a hospital and will make unnecessary what might otherwise possibly be the continued occupancy of a high-cost hospital bed. . . ." 1965 U.S.Code Cong. & Admin.News, p. 1971. In order to meet this objective, the Act limits coverage for extended care services to situations where such care is responsive to the medical needs of a patient. The statute provides:

"[P]ayment for services furnished an individual may be made only . . . if . . . such services are or were required to be given on an inpatient basis because the individual needs or needed *skilled nursing care* on a continuing basis . . ." (emphasis added) 42 U.S.C. § 1395f(a)(2)(C).

In defining the limits of such coverage, the Act specifically excludes expenses which are solely for "custodial care." 42 U.S.C. § 1395y(a)(9).

Newly enacted regulations of the Social Security Administration attempt to clarify the differentiation between custodial and skilled care:

"Posthospital extended care is that level of care provided after a period of intensive hospital care to a patient who continues to require skilled nursing services . . . on a continuing basis . . . but who no longer requires the constant availability of medical services provided by a hospital."

20 C.F.R. § 405.126.

The regulations further state:

"The classification of a particular service as either skilled or unskilled is based on the technical or professional training required to effectively perform or supervise the service. For example, a patient, following instruction, can normally take a daily vitamin pill. Consequently, the act of giving the vitamin pill to the patient because he is too senile to take it himself would not be a skilled service. Similarly, State law may require that all institutional patients receive medication only from a licensed nurse. This fact would not make administration of a medication a skilled nursing service if such medication can be prescribed for administration at home without the presence of a skilled nurse."

20 C.F.R. § 405.127(c)(1)

That same section lists examples in paragraph (b) of specific services which are considered skilled, including intravenous or intramuscular injections.

In defining "continuing basis", the regulations provide:

"[S]killed nursing services are required on a continuing basis . . . when the continuing availability of skilled nursing personnel is warranted. In determining whether the continuing availability of skilled nursing personnel is warranted, the following principles apply:

(a) Frequency of Services.—The frequency of skilled nursing services required rather than their regularity, is the controlling factor in determining whether the continuing availability . . . is warranted. For example, a patient may require intramuscular injections on a regular basis every second day. If this is the only skilled service required, it would not necessitate the continuing availability of skilled nurses."

20 C.F.R. § 405.128

These regulations, formulated in the past year, may have been promulgated in response to Sowell v. Richardson, 319 F.Supp. 689 (D.S.C.1970). That case reversed an Appeals Council decision and held: "A sensible nontechnical approach to interpretation of this chapter is necessary in order to give effect to the purposes of the Act and to afford equitable treatment to those seeking its benefits." *Id.* at 691–692. In attempting to interpret the Act, that Court rejected the narrow view of the Administration that only the actual treatment administered to the claimant is to be considered in determining the propriety of the claim. Such an interpretation is mechanical in its outlook and fails to meet the liberal objectives of the Act.

"Were the law as contended by the Secretary, consideration of the trees is commanded but even a glimpse of the forest is prohibited. It was never intended by Congress that the condition of the insured, treatment that might at any time be necessary, and the pain and discomfort attending inadequate or unprofessional care or lack of care not be considered together with treatment actually provided in determining whether extended care services are justified. Every aspect of the plaintiff's physical condition must be considered in making the determination." *Id.* at 692.

In Reading v. Richardson, 339 F.Supp. 295 (E.D.Mo.1972), the *Sowell* decision was followed, and the term "extended care service" was given a broad inter-

pretation. That Court, like the *Sowell* Court, rendered its decision before the regulations cited above were enacted by the Administration.

■■ The newly enacted regulations, however, continue to unnecessarily limit consideration to the services actually rendered to a patient. Obviously, services rendered must remain the most important objective fact which presents itself in determining the medical necessity of the extended care services. Nevertheless, other factors must also be considered. In many medical conditions of an unstable nature, a patient requires constant skilled surveillance in order to interpret vital life signs and determine when and if specific medical treatment is necessary. In excluding "custodial care" from coverage under the Act, Congress did not intend to thereby prohibit benefits to those who need more than the convenience of nursing home facilities for help in their daily routine. The Medicare Act which creates health insurance for the aged is remedial and therefore to be construed liberally to effectuate the congressional purpose of insuring that adequate medical care is available to the aged throughout this country. 1965 U.S.Code Cong. & Admin. News, p. 1964. *See,* Walston v. Gardner, 381 F.2d 580 (6 Cir. 1967).

■ Turning to the facts of the instant case, plaintiff was admitted to the nursing home in very poor health. Transcript, p. 17. Her attending physician ordered medication for nerves, for sleep, intramuscular injections for pain, and physiotherapy in the form of massage and short-wave diathermy. Her condition was reviewed periodically by the Utilization Review Committee of the nursing home, consisting of various doctors. Dr. Wayne Lafferty of the Committee testified before the hearing examiner that the physiotherapy required highly trained medical personnel or a physiotherapist with special equipment. *Id.* at 88–89. Although plaintiff also received extensive oral medication, the decision of the Committee to approve the use of the facility as an "extended care service" was based on the need for physiotherapy, and not on the medication received by plaintiff. Dr. Donald Mills of the Committee also testified that the type of therapy received by plaintiff required trained personnel to administer. *Id.* at 117.

Dr. M. D. Clayton, Jr., was plaintiff's attending physician both at the hospital and at the nursing home. He certified monthly that the care was required because plaintiff needed skilled nursing care on a continuing basis. He testified that plaintiff required skilled medical attention because of her osteoarthritis and arthritic condition involving the spine, and because of the treatment for a chronic brain type syndrome. *Id.* at 126. This care was not "custodial." *Id.* at 128. In addition to this, plaintiff was administered a digitalis preparation which required constant pulse checks. Although anyone can check a pulse with little training, only a trained personnel could adequately interpret the significance of any pulse change. *Id.* at 139–140.

The only evidence contrary to the testimony of the above physicians was that of the Insurance Review Committee, which approves claims under Medicare. That committee, which reviewed the medical records and never had any personal contact with the patient herself, recommended denial of the claim. The Appeals Council, in reversing the findings of the hearing examiner, agreed with the Insurance Review Committee and stated that: "skilled services were not required and the primary purpose of the services furnished was to assist the claimant in the activities of daily living." *Id.* at 9. The Appeals Council placed great weight on the fact that plaintiff had received some heat treatment and oral medication, both of which are considered as custodial under the regulations. 20 C.F.R. § 405.127(d). Whereas it is true that these medical services did not require skilled personnel, the Appeals Council chose to ignore: 1) the testimony of the doctors on the

Utilization Review Committee; 2) the testimony of the attending physician, Dr. Clayton; 3) the intramuscular injections which plaintiff received late in her stay at the nursing home; 4) the physiotherapy administered by trained personnel on a continuing basis during her stay; and 5) the constant supervision required in order to analyze the unhealthy condition of plaintiff.

The Appeals Council made no mention of the regulation of the Administration which states:

"Because there are significant divergences in opinion among individual physicians with respect to evaluation of medical necessity for posthospital extended care services, the judgment of the attending physician in an extended care case is given great weight, and is not rejected except under *unusual circumstances*."

20 C.F.R. § 405.1137(g)(3)

The Appeals Council did not find such "unusual circumstances" in this case, but rather depended solely on the advice of the Insurance Review Committee and the medical records. In so doing, the Appeals Council erred, and did not base its decision on substantial evidence. It took a view of the Medicare Act which was narrow in scope and not consonant with the Act's broad objectives. The Council gave detailed consideration to the medication received by plaintiff, but did not even take a glimpse at the totality of care received by plaintiff. The regulations promulgated by the Administration are helpful in clarifying the language of the statute, but they must not be allowed to destroy the spirit of the law.

The decision of the Appeals Council of the Social Security Administration must therefore be reversed and judgment entered for the plaintiff. Plaintiff was entitled to posthospital extended care insurance benefits for her stay at the University Park Convalescent Center between July 1, 1969, and September 11, 1969, in accordance with 42 U.S.C. § 1395x(h).