502 F.2d 1337
 Wilson COE, Administrator and Agent of the Estate of Mamie
D. Coe, Appellant,
v.
SECRETARY OF HEALTH, EDUCATION, AND WELFARE, an Officer of
the United States of America, Appellee.
 No. 74-1215.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1974.
Decided Sept. 24, 1974.
 
 Franklin Smith, Elkin, N.C., for appellant.
 Eli Kaplan, Atty., Dept. of Health, Education and Welfare (N. Carlton Tilley, Jr., U.S. Atty., M.D.N.C., and Benjamin H. White, Jr., Asst. U.S. Atty., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit judges.
 BUTZNER, Circuit Judge:
 
 
 1
 The administrator of the estate of Mamie D. Coe appeals from a summary judgment of the district court disallowing Medicare benefits for services provided by a nursing home in Winston-Salem, North Carolina. Accepting the facts as found by the administrative law judge, we reverse because we believe that Mrs. Coe's administrator is entitled to recover as a matter of law.
 
 
 2
 Mrs. Coe had a long illness, following a stroke which partially paralyzed her left side. This condition, combined with other ailments, resulted in a poor prognosis for her recovery. She was discharged from the hospital in the latter part of June, and on July 10, 1970, she entered a nursing home. She remained there until October 4, 1970, when she was readmitted to the hospital. On October 14, 1970, she moved the the nursing home and stayed there until readmission to the hospital on November 21, 1970. Since this case involves two different stays at the nursing home, we shall deal with each period separately.
 
 
 3
 * The law in effect in 1970 provided that Mrs. Coe could receive extended care benefits only if she entered a nursing home within 14 days after her discharge from the hospital.[1] The administrative law judge, resolving conflicting evidence caused by the accidental destruction of the hospital's records, found that she had been discharged on June 22, 1970. Accordingly, he ruled that she was not entitled to benefits because she did not enter the nursing home within 14 days. His determination of elapsed time between discharge from the hospital and admission to the home is supported by substantial evidence, and therefore it is binding on us. See Estep v. Richardson, 459 F.2d 1015, 1016 (4th Cir. 1972).
 
 
 4
 The administrative law judge correctly interpreted the 14 day rule in effect at the time he rendered his decision. The rule is based on the statutory definition of 'post hospital extended care services.' This definition was amended in 1972, but apparently the amendment was not called to the attention of the district court. Under the current statute, post hospital extended care services include services furnished a patient who is admitted to a qualified nursing home 'within such time as it would be medically appropriate to begin an active course of treatment, in the case of an individual whose condition is such that skilled nursing facility care would not be medically appropriate within 14 days after discharge from a hospital.'[2]
 
 
 5
 An appellate court should 'apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.' Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476, 488 (1974); United States v. Schooner Peggy, 5 U.S. (1 Cranch) 103, 109, 2 L.Ed. 49 (1801). We conclude, therefore, that the amended statute should be applied to this case. Ordinarily, we would remand to afford the Secretary an opportunity to reconsider this claim in the light of the amendment. In this instance, however, there is no need to do so. Cf. Breeden v. Weinberger, 493 F.2d 1003, 1011 (4th Cir. 1974). Mrs. Coe was denied benefits solely because she did not satisfy the 14 day rule. The undisputed facts, however, indicate that she qualifies under the amendment. At the time she was discharged from the hospital, there was a possibility that she could be cared for at her own home. However, it became apparent that she needed skilled care that he elderly husband could not provide, and her doctor ordered her admission to the nursing home. She was unable to eat and had to be fed through a nasal tube for over a month.[3]
 
 
 6
 Accordingly, we hold that Mrs. Coe's administrator is entitled to recover benefits for her care in the nursing home from July 10, 1970 to October 4, 1970.
 
 II
 
 7
 On October 4, 1970, Mrs. Coe re-entered the hospital where she was treated for a urinary infection. She returned to the nursing home on October 14, 1970, and remained there until she again left for the hospital on November 21, 1970. Throughout her second stay in the nursing home, Mrs. Coe was unable to take care of herself. She had to be fed, though not through a tube, her position in bed had to be regularly changed, and she received daily physical therapy until, toward the end of her stay, it became apparent that she would no longer benefit from this treatment. Her urinary problems persisted, necessitating use of an indwelling catheter, which had to be monitored, irrigated and occasionally changed.
 
 
 8
 The Secretary, affirmed by the district court, disallowed benefits because in his opinion Mrs. Coe was not furnished skilled nursing care as required by the Act,[4] but on the contrary was furnished only custodial care which is excluded from coverage.[5] In reaching this decision, the administrative law judge and the district court applied Social Security Regulations that were promulgated after Mrs. Coe left the nursing home.
 
 
 9
 The Act provides that extended care services include nursing care under the supervision of a registered professional nurse, physical therapy, and other services necessary to the health of the patient.[6] The regulations in effect at the time Mrs. Coe was confined in the nursing home tracked the statute.[7] The uncontradicted facts establish that Mrs. Coe satisfied the statutory requirements as interpreted by those regulations. Her physician certified her need for skilled nursing care. She received physical therapy and her indwelling catheter required coninued attention and occasional removal and reinsertion.
 
 
 10
 In June 1971, the regulations were amended by the addition of several paragraphs defining post hospital extended care and skilled nursing services.[8] The amended regulations cite a number of services that are not necessarily indicative of skilled nursing care. The examples include frequently turning a bedridden patient, assistance with eating, physical therapy, and the routine care of an indwelling catheter. The administrative law judge and the district court expressly relied on these new regulations to bar reimbursement. Mrs. Coe's administrator urges that even if the new regulations are applicable, the Secretary's disallowance is not supported by substantial evidence. We believe, however, that it is unnecessary to decide this issue.
 
 
 11
 In our view, the new regulations should not have been applied retrospectively to Mrs. Coe's claim. The principles governing retrospective application of newly enacted laws pertain also to new regulations of administrative agencies. Thorpe v. Housing Authority of Durham, 393 U.S. 268, 282, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). The general rule prescribing retroactive application of the law, discussed in Part I of this opinion, is subject to an important exception: retrospective application is inappropriate when it results in manifest injustice. Application of the current regulations in this instance constitutes a prohibited interference with Mrs. Coe's antecedent right to reimbursement at the time the services were rendered. Cf. Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964). Divestiture of this matured right is a type of manifest injustice which the exception is designed to prevent. Cf. Greene v. United States,supra; see Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476, 491 (1974) (dictum); Thorpe v. Housing Authority of Durham,supra, at 282 n. 43 (dictum).
 
 
 12
 Finally, we reject the government's contention that the care provided Mrs. Coe should be excluded from coverage because it is custodial.[9] This type of care is not defined either by the statute or the regulations. Therefore, the statute should be construed according to the commonplace usage of its words. Custodial is defined as 'marked by or given to watching and protecting rather than seeking to cure, (for example) custodial care rather than a therapeutic program.'[10] Exclusions from coverage should be narrowly construed lest they inadvertently encompass the qualifications for benefits. Thus, when an elderly patient needs both custodial and skilled nursing care, the remedial purpose of the Act would be defeated by denying coverage. Ridgely v. Secretary of Dept. of Health, Education and Welfare,345 F.Supp. 983, 993 (D.Md.1972), aff'd, 475 F.2d 1222 (4th Cir. 1973). The undisputed evidence shows that Mrs. Coe's care was not confined to watching or protecting her. Her daily physical therapy, and the constant attention to her urinary infection were therapeutic measures.
 
 
 13
 We conclude, therefore, that Mrs. Coe's administrator is entitled to recover benefits for her second stay in the nursing home.
 
 
 14
 The judgment of the district court is reversed and this case is remanded for entry of judgment for the administrator.
 
 
 
 [1]
 42 U.S.C. 1395x(i) (1970)
 
 
 [2]
 42 U.S.C. 1395x(i)(C). The older 1395x(i) was amended by 248, P.L. 92-603 (1972). Unlike many other amendments to the Social Security Act enacted by P.L. 92-603, 248 became effective immediately
 
 
 [3]
 The statute defining extended care services and the regulations in effect at the time of Mrs. Coe's treatment implicitly recognize, and current regulations expressly state, that feeding through a levine tube is a skilled nursing service. 42 U.S.C. 1395x(h); 20 C.F.R. 405.125 (1970); 20 C.F.R. 405.127(b)(2) (1974)
 
 
 [4]
 42 U.S.C. 1395f(a)(2)(C) (1970)
 
 
 [5]
 42 U.S.C. 1395y(a)(9) (1970)
 
 
 [6]
 42 U.S.C. 1395x(h) (1970)
 
 
 [7]
 20 C.F.R. 405.125 (1970)
 
 
 [8]
 20 C.F.R. 405.126-128 (1974)
 
 
 [9]
 42 U.S.C. 1395y(a)(9) (1970)
 
 
 [10]
 Webster's New International Dictionary at 559 (3d ed. 1964)