**Mrs. Carrie WESTGARD, Plaintiff,**

v.

**Casper WEINBERGER, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. No. A2–74–11.**

United States District Court,
D. North Dakota.
Northeastern Division.

March 26, 1975.

Daniel S. Letnes, Letnes & Marshall, Grand Forks, N. D., for plaintiff.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for defendant; Ronald S. Luedemann, Acting Reg. Atty., Elizabeth M. April, Asst. Reg. Atty., Dept. of H. E. W., Denver, Colo., of counsel.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

This is an action brought under § 205(g) of the Social Security Act, 42 U. S.C. § 405(g),[1] and § 1869(b) of the

---

1. Section 205(g) of the Act, 42 U.S.C. § 405(g) provides for the nature of judicial review in matters of this kind. It states in part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . .. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are

Act, 42 U.S.C. § 1395ff(b),[2] in which plaintiff (claimant) seeks review of a final decision of the Appeals Council of the Social Security Administration.

This final decision denied claimant medicare benefits as provided under § 1812(a) of the Act, 42 U.S.C. § 1395d (a), for inpatient hospital services [3] she received at the Medical Center Rehabilitation Hospital at the University of North Dakota, Grand Forks, from December 6, 1971, to January 8, 1972. Claimant incurred a bill for the services at the Center of $2,279.57.

### Procedural History

The Rehabilitation Hospital submitted to Blue Cross of North Dakota, an intermediary which acts on behalf of the Secretary, a bill for reimbursement for the cost of services provided to plaintiff. The intermediary determined that the services rendered were not covered by hospital insurance (medicare) benefits, and informed plaintiff of its determina-

tion on February 23, 1972. On a request for reconsideration, Dr. C. A. Sedlak reviewed the claim for the intermediary, and determined that "probably the original adjudication was correct and that it should remain as a noncovered reject." The Social Security Administration upheld the determination and plaintiff requested a hearing before an Administrative Law Judge.

At the hearing before the Administrative Law Judge, claimant was not present, and was represented by her son without an attorney. The Administrative Law Judge held against the claimant, and her request for review by the Appeals Council was denied. Under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), a civil action was brought in this Court for judicial review.

### Limited Review

■ The right to judicial review is limited. 42 U.S.C. § 405(g) provides that the district court is to consider only

---

based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."

2. Section 1869(b) of the Act, 42 U.S.C. § 1395ff(b), provides for judicial review of the final decision of the Secretary of the Department of Health, Education and Welfare when the amount of hospital insurance benefits in controversy is $1,000 or more. It provides in part:

"(b)(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

(C) the amount of benefits under part A of this subchapter (including a determination where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

(2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be

available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial review be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000."

3. Inpatient hospital services are defined in 1861(b) of the Act, 42 U.S.C. § 1395x(b), which provides in relevant part:

"The term 'inpatient hospital services' means the following items and services furnished to an inpatient of a hospital and (except as provided in paragraph (3)) by the hospital—

(1) bed and board;

(2) such nursing services and other related services, such use of hospital facilities, and such medical social services as are ordinarily furnished by the hospital for the care and treatment of inpatients, and such drugs, biologicals, supplies, appliances, and equipment, for use in the hospital, as are ordinarily furnished by such hospital for the care and treatment of inpatients; and

(3) such other diagnostic or therapeutic items or services, furnished by the hospital or by others under arrangements with them made by the hospital, as are ordinarily furnished to inpatients either by such hospital or by others under such arrangements . . . ."

the pleadings and the transcript of the record "including the evidence upon which the findings and decision complained of are based." Further, "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Accordingly, a federal district court is barred from considering evidence not within the administrative record, is prohibited from trying the case *de novo*, and cannot reverse the final determination if the findings therein are supported by substantial evidence.[4] Shoultz v. Weinberger, 375 F.Supp. 929, 931 (E.D.Wis. 1974); Allen v. Richardson, 366 F.Supp. 516, 519 (E.D.Mich.1973); Harris v. Richardson, 357 F.Supp. 242 (E.D.Va. 1973). This means that the record must contain such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Ziskin v. Weinberger, 379 F.Supp. 124 (S.D.Ohio 1973); Ridgely v. Secretary of Department of Health, Education & Welfare, 345 F.Supp. 983, 988 (D.Md.1972), aff'd 475 F.2d 1222 (4th Cir. 1973). "To be substantial, evidence must rise to a higher degree than a mere scintilla, but still may be somewhat less than a preponderance of the evidence . . . ." Ziskin, 379 F.Supp. at 126; Ridgely, 345 F.Supp. at 988. In considering appeals from the decisions of the Secretary, the courts are "duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings and that his decision is rational." Allen, 366 F.Supp. at 519; Harris, 357 F.Supp. at 242.

## Basis of Secretary's Decision

Defendant (Secretary) claims in his brief that payment to plaintiff is barred under two exclusions set forth under § 1862(a) of the Social Security Act, 42 U.S.C. § 1395y(a), which reads as is relevant:

"Notwithstanding any other provision of this title, no payment may be made under part A or part B of this subchapter for any expense incurred for items or services—

(1) which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member; . . .

.    .    .    .    .    .

(9) where such expenses are for custodial care . . . ."

The Administrative Law Judge stated his Conclusions of Law as follows:

"The care furnished the recipient-patient during the period in question was not that standard which would require the presence of skilled medical personnel nor was such confinement necessary for medically diagnostic study, as mandatory and required by Section 1862(a)(9) of the Social Security act, as amended."

The Judge's relevant Findings of Fact are:

### I

"The wage earner, Carrie Westgard, age 79, was admitted to Medical Rehabilitation Center Hospital, a participating facility, located in the City of Grand Forks, and State of North Dakota, on the 6th day of December, 1971, with admitting diagnosis of weakness and possible cerebral infarction.

.    .    .    .    .    .

### IV

That during the period in question the services rendered to and received

4. Claimant has objected to the summary judgment procedure herein. In view of the limited nature of review in medicare cases, disposition is necessarily summary, and summary judgment has repeatedly issued in cases raising claims identical to that of the claimant herein. Coe v. Secretary of Health, Education and Welfare, 502 F.2d 1337 (4th Cir. 1974); Samuels v. Weinberger, 379 F.Supp. 120 (S.D.Ohio 1973); Allen v. Richardson, 366 F.Supp. 516 (E.D. Mich.1973). Claimant has submitted her affidavit resisting the Secretary's motion, but the Court is limited to a review of the administrative record, and the affidavit cannot be considered.

by the claimant-patient were primarily supportive in nature which required neither the continued attention of skilled medical personnel nor confinement for medical diagnostic study purposes."

Initially it is observed that the Secretary, in support of his motion for summary judgment, raises two exclusions, 42 U.S.C. § 1395y(a)(1) and (9) (§ 1862a(1) and (9) of the Act), as bars to the claim. In his Conclusions of Law, the Administrative Law Judge referred only to § 1862(a)(9), relating to "custodial care". He does state that the care furnished was not for "medically diagnostic study", but this is a requirement under § 1395y(a)(1), not § 1395y(a)(9). Although there is no specific indication in either the findings or conclusions of the Administrative Law Judge that he considered whether claimant's stay at the Rehabilitation Hospital was for the "treatment of illness or injury or to improve the functioning of a malformed body member. . . .", the Court has examined the record to determine whether the Secretary's denial of benefits is supported by substantial evidence under either exclusion, for it appears that if the care furnished is not reasonable and necessary under § 1395y(a)(1), it is "custodial care" under § 1395y(a)(9).

On its review of the record, the Court finds that (1) the Secretary failed to apply proper legal standards in considering the claim, and (2) his finding that the services rendered to claimant were "primarily supportive in nature," is not supported by substantial evidence. It is concluded that Defendant's motion for summary judgment should be denied, and claimant is entitled to relief.

### Recorded Facts

The recorded facts are undisputed and establish that claimant fell at home and was hospitalized at United Hospital, Grand Forks, where a possibility of cerebral infarction was noted. On admission to United, claimant exhibited significant weakness and confusion.[5] During her 37 day stay at United, characterized as "acute disease hospitalization", claimant's condition gradually stabilized and her attending physician, Dr. Lloyd Ralston, requested her admission to the Rehabilitation Hospital because he felt she should be transferred "for efforts to regain functional independence *through multi-disciplinary treatment.*" (emphasis added).

Upon admission to the Center, a medical consultation report, dated December 7, by a Dr. Butler, characterized plaintiff's condition as "transient cerebral isechemic attacks (without) infarction." The record, including the nurse and clinical notes, physicians' orders, and discharge summary, indicates that claimant was significantly weak and confused on admission, was unable to ambulate independently and needed assistance to walk from her bed to a chair, required help in feeding herself a moderately soft diet, and needed help in attending to personal hygiene and toilet needs. She also had a swelling in her right leg and a diagnosis of arterial sclerosis.

The request of Dr. Ralston was carried out, and claimant was initially contacted by an occupational therapist, who recommended, in an Initial Evaluation Summary, activities for increasing tolerance, upper extremity strengthening, wearing of a tight elastic stocking to improve the circulation and reduce the swelling in her leg, increased motivation and specific therapy utilizing a standing table and a "Oliver Rehabilitation Bicycle". The occupational therapist's initial summary was also signed by Dr. Donald F. Barcome, claimant's attending physician, and Director of the Rehabilitation Hospital. The therapist scheduled claimant for two one-hour sessions daily and, on discharge, noted her power of grasp and finger strength increased.

A physical therapist noting claimant's progress at the Center entered this progress note on December 14:

"This patient continues to come to physical therapy twice daily. The

---

5. Payment for plaintiff's hospitalization at United is not an issue.

swelling in her right leg has decreased and her general strength is increasing. Her ambulation has improved and she will begin to walk between departments with stand-by assistance."

The physical therapist's final note, dated January 4, 1972, states:

"This patient was last treated in physical therapy January 7, 1972. At that time strength had increased. She was lifting 10 lbs. SLR [straight leg raising] bilaterally. On the N–K table [an exercise table to which weights are attached to improve hamstrings and quads] she was lifting 17½ lbs. quads on the right and 15 lbs. quads on the left. Patient was also ambulating independently. Patient still lacked endurance and tired easily."

In addition to the therapists' reports, "medicare staff" reports also indicate improvement to the point that by discharge, claimant was independent as to ADL (Active Daily Living) and ambulation. These notes read in part as follows:

December 15, 1971:

"Reports that this patient is gaining in tolerance and strength and she is independent in activities. The swelling in the leg has decreased and the patient is able to walk independently with standby assistance. She is slow and unsteady and so it is felt she is not safe by herself. The patient is slightly confused and there is some discussion in regard to where this patient will go upon discharge. Goals of this admission are to increase patient's strength and tolerance and evaluate the confusion that exists at the present time."

December 22, 1971:

"Patient is improving in general endurance. She is independent in ADL and improving in ambulation, however, she is not safe in independent ambulation as yet. The prognosis for independent living is actually quite good, however, not in an unsupervised environment. . . . "

December 29, 1971:

"Patient in (sic) independent in ADL, however, in ambulation she continues to lack confidence and require assistance. . . . "

January 5, 1972:

"Patient has progressed satisfactorily and at this time is independent in ADL and ambulation. General tolerance is a primary problem. While it is not felt that the patient can live alone, apparently arrangements to have her live with her sister and/or sister-in-law have been worked out for this week."

Each of these entries was signed by Dr. Barcome.

During her stay at the Rehabilitation Hospital, claimant's daily temperature, pulse and respiration were observed and charted, and medications, prescribed by Dr. Butler, were administered daily. The nurses' notes provide little information, relating only to the patient's daily living tasks to which assistance was given.

On December 18, 1971, Dr. Barcome, as claimant's attending physician, certified that continued hospitalization was necessary, stating "[patient] continues to improve—should reach independence in ambulation & ADL," and estimated her remaining hospitalization at three weeks. On December 24, 1971, Dr. Barcome again filled out a certification form, certifying hospitalization was necessary, giving as his reason that "[patient] nearing complete independence but not safe for independent living," and estimated the remaining hospitalization to be two weeks. Further, a Utilization Review form, signed by a Dr. Wilson, indicates claimant's admission to be necessary and that no action by the Utilization Review Committee was necessary.

Finally, the Discharge Summary of Dr. Barcome, dated January 8, 1972, and a letter written by Dr. Barcome, dated June 26, 1973, testify to the nature of claimant's debilitated physical condition

on admission to the Rehabilitation Hospital, the medical purpose for the admission, the treatment administered, and the success of the treatment in improving plaintiff's condition.

DISCHARGE SUMMARY:

"This 77-year old woman was admitted to the Rehabilitation Hospital on December 6, 1971, following a period of acute disease hospitalization at the United Hospital. Historically, the patient when admitted to the United Hospital, had fallen at home and possibility of cerebral infarction was entertained. She demonstrated significant weakness and confusion. This situation gradually cleared and the patient was transferred to the Rehabilitation Hospital for attempts to regain independent living status. During her stay at the Rehabilitation Hospital the patient gradually improved in strength and tolerance. She regained total independence in ADL and ambulation. At this time it is felt the patient can live independently and following arrangements with the family for supervision, the patient was discharged to her family on January 8, 1972.

FINAL DIAGNOSIS:

Chronic brain syndrome, with probable nutritional deprivation."

LETTER:

"To Whom it May Concern:

RE: Carrie Westgard

This 77-year-old woman was admitted to the Rehabilitation Hospital on December 6, 1971, in transfer from United Hospital, Grand Forks, North Dakota, at the request of Lloyd Ralston, M.D. At time of admission to the acute hospital the patient was grossly and significantly confused. Overall debility to a point of total dependency had occurred. Question of nutritional deprivation existed. During the patient's stay at the acute hospital, the condition gradually stabilized and it was felt by Dr. Ralston that the patient should be transferred to the Rehabilitation Hospital for efforts to regain functional independence through multi-disciplinary treatment. Under treatment the patient showed progressive improvement from a physical standpoint to a point where she did regain total independence in ADL and ambulation. The patient's underlying problem of confusion and chronic brain syndrome, it was felt, would be a deterrent to her living alone unless adequate supervision to insure necessary care and nutritional intake was carried out. After discussions with the family, arrangements were made by the family for adequate supervision and the patient was returned to independent living on January 8, 1972."

*Application of Erroneous Standard in Arriving At a Final Determination*

Dr. Sedlak's rejection is predicated upon a lack of "skilled nursing care", that no reasons were given for claimant's admission to the Rehabilitation Hospital, that "no definite outline of PT was established," and that "Doctors' orders were few and far between." Much of the care relating to daily activities which claimant received in the course of her treatment was necessarily custodial, and the Secretary looked solely to the custodial aspect of the care furnished claimant in determining she was not entitled to medicare coverage. No consideration was given to claimant's total physical condition on admission, or the purpose of her admission. This was unduly restrictive.

In moving for summary judgment, the Secretary has taken the position that the intent of Congress in passing the Social Security Act was to provide protection against the costs of these injuries and illnesses requiring the continued attention of trained medical and paramedical personnel as opposed to those requiring supportive care. The Secretary noted:

"The nurses' Bedside record does not indicate that any skilled nursing services were rendered. The staffing

notes of the Department of Nursing similarly reveal no skilled services."

Specifically, the Secretary asserts that, although the claimant received occupational and physical therapy, there is no indication she required or received the coordinated team care which would justify hospitalization. The coordinated team care which the Secretary requires was set forth as follows:

" . . . a patient would be deemed to require a hospital level of care if he requires a relatively intense rehabilitation program which requires a multidisciplinary coordinated team approach to upgrade his ability to function as independently as possible. . . . Since the effectiveness of a hospital-level rehabilitation program depends on the continuing coordination of all the disciplines involved in the patient's rehabilitation, team conferences are held regularly (at least every 2 weeks) to assess the individual's progress. . . . A team conference may be a formal or informal conference, e. g., patient case rounds; however, a review by the various team members of each others' notes would not constitute a team conference. The decisions made during such conferences must be recorded in the clinical record. . . . Before payment is made on claims received from such a hospital, the hospital would be required to document that a hospital level of rehabilitative care was in fact needed and provided, i. e., that team conferences were held on a regular basis and that there was a need for and involvement of various allied health professionals in the patient's treatment program on a relatively intense basis." Social Security Administration Hospital Manual, HIM–10, § 211 (a), pp. 25f–25g.

The Secretary's interpretation of the scope of 42 U.S.C. § 1395y(a)(1) and (9) has been repeatedly rejected by the courts as too narrow an approach to effectuate the intent of Congress to provide broad relief from the costs of medical care to the aged. The approach of the courts to interpretation of Congressional medicare provisions was fashioned in Sowell v. Richardson, 319 F.Supp. 689 (D.S.C.1970):

" . . . *A sensible nontechnical approach to interpretation* of this chapter is necessary in order to give effect to the purposes of the Act and to afford equitable treatment to those seeking benefits. (See Pasquale v. Cohen, 296 F.Supp. 1088, (D.R.I.1969))."

" . . . It was never intended by Congress that the condition of the insured, treatment that might at any time be necessary, and the pain and discomfort attending inadequate or unprofessional care or lack of care not be considered together with treatment actually provided in determining whether extended care services are justified. *Every aspect of the plaintiff's physical condition must be considered in making the determination.* Treatments immediately required are of course a major factor. *However, even if no treatment were required the condition of the insured might be so unstable or unsatisfactory, as to require the extended services contemplated by the statute. . . .*" at 691, 692 (Emphasis added).

The following cases have adopted the rationale and approach of Sowell, and have reversed the Secretary's final determination when the determination was based upon a consideration of treatment received as the sole criteria in defining § 1395y(a)(1) and (9): Coe v. Secretary of Health, Education and Welfare, 502 F.2d 1337 (4th Cir. 1974); Hultzman v. Weinberger, 495 F.2d 1276 (3rd Cir. 1974); Rockingham National Bank v. Weinberger, 381 F.Supp. 373 (D.Vir. 1974); Samuels v. Weinberger, 379 F. Supp. 120 (S.D.Ohio); Breeden v. Weinberger, 377 F.Supp. 734 (M.D.La. 1974); Schoultz v. Weinberger, 375 F. Supp. 929 (E.D.Wis.1974); Allen v. Richardson, 366 F.Supp. 516 (E.D.Mich. 1973); Harris v. Richardson, 375 F. Supp. 242 (E.D.Va.1973); Pippin v. Richardson, 349 F.Supp. 1365 (M.D.Fla. 1972); Bremer v. Richardson, 347 F.

Supp. 465 (D.Neb.1972); Ridgely v. Secretary of Health, Education & Welfare, 345 F.Supp. 983 (D.Md.1972); aff'd 475 F.2d 1222 (4th Cir. 1973); Reading v. Richardson, 339 F.Supp. 295 (E.D.Mo.1972). Many of these cases were based on records with factual situations similar to that which is before the Court in this case. Nevertheless, the Secretary persists in looking solely to the care provided as the criteria for determining the scope of § 1395y(a)(1) and (9).

■■■ The enumerated cases have variously stated the broad remedial scope of medicare benefits intended by Congress:

"Indeed, it appears to this Court that the purpose of the custodial care disqualification in § 1395y(a)(9) was not to disentitle old, chronically ill and basically helpless, bewildered and confused people like Mrs. Hape from the broad remedy which Congress intended to provide for our senior citizens. Rather, the provision was intended to stop cold-blooded and thoughtless relatives from relegating an oldster who could care for him or herself to the care of an ECF [Extended Care Facility] merely so that that oldster would have a place to eat, sleep, or watch television. But when a person is sick, especially a helpless old person, and when those who love that person are not skilled enough to take care of that person, Congress has provided a remedy in the Medicare Act, and *that remedy should not be eclipsed by an application of the law and findings of fact which are blinded by bureaucratic economics to the purpose of the Congress.*" Ridgely v. Secretary of Health, Education and Welfare, 345 F.Supp. 983, 993 (D.Md. 1972) (emphasis added); Samuels v. Weinberger, 379 F.Supp. 120, 123 (S. D.Ohio, 1973).

"Recent federal cases involving Medicare appeals have held that:

'The Medicare Act which creates health insurance for the aged is re-

medial and therefore to be construed liberally to effectuate the congressional purpose of insuring that adequate medical care is available to the aged throughout this country.' Pippin v. Richardson, supra, 349 F.Supp. at 1369; Reading v. Richardson, supra."

Allen v. Richardson, 366 F.Supp. 516, 520 (E.D.Mich.1973).

Thus, it has been asserted that the "[e]xclusions from coverage should be narrowly construed lest they inadvertently encompass the qualifications for benefits. . . ." Coe v. Secretary of Health, Education, and Welfare, 502 F. 2d 1337, 1340 (4th Cir. 1974). Although the Secretary's findings are conclusive if supported by substantial evidence, the courts have consistently stated that the reviewing court is not required to accept the Secretary's, or his delegates' conclusions of law or interpretations of the scope of the exclusions under § 1395y(a). Hultzman v. Weinberger, 495 F.2d 1276, 1281 (3rd Cir. 1974); Schoultz v. Weinberger, 375 F. Supp. 929, 932 (E.D.Wis.1974); Ridgely v. Secretary of Health, Education and Welfare, 345 F.Supp. 983, 989 (D.Md. 1972), aff'd 475 F.2d 1222 (4th Cir. 1973).

Congress has not defined the terms used in § 1395y(a)(1) and (9), but definitions, utilizing a sensible non-technical approach effectuating the broad remedial reach of the statute, have been judicially created. As to "custodial care" it has been said:

"It is care that could be administered by any layman, without any possible harm to the health of the one in custody. That is the simple reason why payment for it is not covered in a law the purpose of which is to pay medical benefits to the aged. This view of 'custodial care' is also in agreement with the definition of 'custodial' as found in Webster's Third New International Dictionary (1967 ed.) i. e., 'related to or marked by guardianship or maintaining safely.' Thus mere

**1020**

'custodial care' refers quite simply to guardianship for convenience that has *no significant relation to medical care of any type.*" Samuels v. Weinberger, 379 F.Supp. 120, 123 (S.D.Ohio 1973) (emphasis added).

As to interpreting the exclusion under § 1395y(a)(1), the Third Circuit in Hultzman v. Weinberger, 495 F.2d 1276 (3rd Cir. 1974) expounded:

"The Secretary apparently construes section 1395y(a)(1) to mean that services which are admittedly reasonable and necessary for the treatment and diagnosis of a patient's ailments are nonetheless excluded from coverage if the Secretary determines that it was not reasonable and necessary to render those services in a hospital (as opposed to a lesser care facility). This construction of section 1395y(a)(1), however, cannot be sustained in the face of the clear and plain language of that section. *Section 1395y(a)(1) excludes from coverage only those services which are not reasonable and necessary to the treatment or diagnosis of a patient's ailments. It does not speak at all to the question of whether it is medically necessary to provide such services on an inpatient or outpatient basis or in a hospital rather than extended care facility.*" at 1282 (emphasis added).

■ In view of the broad remedial reach of the statute and the interpretation found in case law, it is clear that the interpretation which the Secretary urges upon this Court is overly technical. The Secretary cannot refuse to consider the patient's condition at the time of admission and the medical purposes of her admission, and eligibility for benefits cannot turn on the institution's non-compliance with comprehensive technical and bureaucratic regulatory guidelines in the definition of "skilled nursing care" or "coordinated team rehabilitative care".

*Secretary's Final Decision Not Supported By Substantial Evidence*

■ In Breeden v. Weinberger, 377 F.Supp. 734, 737 (M.D.La.1974), three principles applicable to the case before this Court were found to emerge from case law:

1. "The first is that in determining whether the services rendered to the patient are covered under the Act, it is not only the services actually rendered which are to be considered, but rather every aspect of the patient's physical condition. . . . "

2. "The second principle is that while an attending physician's opinion is not a binding conclusion which the Secretary must accept, where there is no direct conflicting evidence, his decision is to be given great weight." See also Rockingham National Bank v. Weinberger, 381 F.Supp. 373, 376 (D.Vir.1974); Ridgely v. Secretary of Health, Education and Welfare, 345 F.Supp. 983, 991, 993 (D.Md.1972), aff'd 475 F.2d 1222, 1224 (4th Cir. 1973); Reading v. Richardson, 339 F.Supp. 295, 301 (E.D.Mo.1972).

3. "A third and closely related principle is that under the Medicare provisions of the Social Security Act, Congress intended that the responsibility for determining what services the patient requires rests primarily with the treating physician. Reading v. Richardson, 339 F.Supp. 295 (E.D.Mo.1972)."

Applying the last two principles, it is clear the Secretary's determination that the services rendered to and received by the claimant-patient were primarily supportive in nature, which did not require the continued attention of skilled medical personnel, is not supported by substantial evidence. The attention of skilled medical personnel on a daily basis was necessary to administer the treatment requested by Dr. Ralston, and the

custodial care incident to that treatment was but a necessary corollary. The claimant received the skilled services of an occupational therapist, a physical therapist, professional nurses who charted her temperature, pulse and respiration, and other services overseen by her attending physician at the Center, which was the multidisciplinary services recommended and which resulted in the independence sought by the physician who had attended her at United Hospital.

The rationale of Bremer v. Richardson, 347 F.Supp. 465 (D.Neb.1972), is particularly applicable to this case.

"This Court is fully convinced that the Hearing. Examiner applied too narrow a reading to his own definition in arriving at his decision, or ignored his own findings of fact without a justifiable basis for so doing. The record clearly and without contradiction reveals that the medicational aspects of the hospitalization were only secondary, and that the primary purpose of the treatment was to *teach* the claimant to walk again under conditions whereby she would be least likely to reinjure herself.

The Hearing Examiner found that claimant was 'unable to walk very well with the walker until toward the end of her hospitalization.' [Tr. 9] The Examiner then concludes that assistance in walking did not qualify as specialized therapy. This finding is clearly contradicted by his earlier finding that even trained medical personnel were having difficulty teaching the claimant to walk. The fact that her other medical problems had improved such that no 'intensive' care was required, that her diet was regular, and that medication was self-administered [Tr. 9] really has no bearing in this case. Furthermore it is not the quantity of care that is critical but it is the *quality* of care and the possible consequences of the lack of required services that is controlling in this case. If trained medical personnel had difficulty teaching her to walk is it feasible that this task should be entrusted to the unskilled? The fact that an elderly frail person cannot learn as fast as a robust youthful person should not be a negative factor, in fact it is a very significant factor. A second fall could have been disastrous." at 469.

It is ordered that defendant's motion for summary judgment is denied.

It is further ordered that the determination of the Secretary is reversed and that judgment be entered for the plaintiff and against the defendant for the relief requested.