GOLDEN RULE INSURANCE
COMPANY, Plaintiff,

v.

ESTATE OF Walter P. WESTMEYER,
Deceased, et al., Defendants.

No. 85–1590C(1).

United States District Court,
E.D. Missouri, E.D.

Jan. 9, 1987.

Guy E. McGaughey, Jr., McGaughey & McGaughey, Lawrenceville, Ill., James E. Neville, Timothy S. Richards, St. Louis, Mo., for plaintiff.

Maurice B. Graham, Schnapp, Graham & Reid, Fredericktown, Mo., for Estate of Walter P. Westmeyer and Louise Westmeyer.

## MEMORANDUM

NANGLE, Chief Judge.

The plaintiff, Golden Rule Insurance Company, seeks a declaration of no coverage for certain hospital charges incurred by the deceased policyholder, Walter P. Westmeyer. In particular, the plaintiff relies upon a clause of the insurance policy excluding coverage for "expenses incurred while in a hospital or institution primarily for custodial or nursing services." The plaintiff also seeks to recover sums mistakenly paid for services allegedly within this exclusion.

This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 52.

### A. FINDINGS OF FACT

1. On October 22, 1982, Walter P. Westmeyer was struck by a cow while attempting to get it out of a trailer. As a result, Westmeyer sustained severe head injuries. Westmeyer received emergency medical treatment at Farmington Community Hospital and, on October 22, 1982, was transferred to St. Luke's Hospital East in St. Louis, Missouri. Westmeyer remained at St. Luke's until February 3, 1983, when he was taken to the Missouri State Chest Hospital (MSCH). He remained at MSCH until

his death on March 1, 1984. Westmeyer died at the age of 79 years.

2. Upon his arrival at St. Luke's, Westmeyer received a right frontal craniotomy and an evacuation of a large, right, frontal, subdural and intracerebral hematoma. During the two months following this operation, several other procedures were used to drain accumulations of blood inside Westmeyer's skull.

Westmeyer also underwent treatment for blood clots, ulcers, and several bouts of pneumonia. As a result of his head injuries, Westmeyer was left semi-comatose. During his stay at St. Luke's, his neurological condition fluctuated at first but remained stable during January of 1983. At the time of discharge, Westmeyer could open his eyes to verbal stimuli, and occasionally his eyes appeared to follow persons across the room. He did not follow commands and moved only his right arm. Unable to feed himself, Westmeyer was placed on a tube feeding program. Westmeyer received both custodial and noncustodial care at St. Luke's.

Westmeyer's neurological condition affected his ability to breathe. Because Westmeyer was unable to breathe on his own, a tracheostomy was performed, and Westmeyer was placed on a mechanical ventilator. During most of his stay at St. Luke's, Westmeyer could breathe only with the assistance of the ventilator. Though several attempts to wean him from the ventilator failed, Westmeyer was successfully removed from the ventilator on January 30, 1983. Shortly thereafter, Westmeyer was transferred to MSCH for chronic respiratory care.

3. At MSCH, Westmeyer's neurological condition remained the same. He was fed through a nasal-gastric tube and had a catheter in place. He continued to receive respiratory care and frequent suctioning of secretions through the tracheostomy. His condition improved somewhat with the removal of the tracheostomy tube. While at MSCH, Westmeyer was treated for an ulcer of the small intestine and for both internal and external infections. He was given prescribed medication, received physical therapy, and was visited almost daily by the attending physician. On March 1, 1984, Walter P. Westmeyer died.

4. The plaintiff's experts classified various services as custodial or nursing. The plaintiff then calculated the amount of each service as a percentage of the total charges. These calculations are summarized below.[1] In classifying the services, the plaintiff's experts used the definition of custodial set out in *Hrebec v. Aetna Life Insurance Co.*, 603 S.W.2d 666, 671 (Mo.Ct. App.1980), discussed below.

1.

| Nursing or Custodial | | Not Nursing or Custodial | |
|---|---|---|---|
| Room | 53.93% | Intraveneous Therapy | 8.58% |
| Intraveneous Therapy | 2.85% | Respiratory Therapy | 8.60% |
| Equipment Rental | .92% | Pharmacy Dietary | 1.83% |
| Physical Therapy | 4.36% | Pharmacy | 2.15% |
| Pharmacy (50%) | 2.16% | Cardio Pulmonary | .37% |
| Medical Supplies | 8.15% | Chemistry Lab | .68% |
| | | Physicians Visits | 2.65% |
| | | Laboratories | 1.46% |
| | | Blood Administration | .26% |
| | | Radiology | .23% |
| | | Radiologist Fees | .02% |
| | | Misc.: | |
| | | CPR | .21% |
| | | History | .08% |
| | | Medical Supplies: | |
| | | Ambu Bag | .04% |
| | | Cuffed Trachea Tube | .47% |
| | 72.37% | | 27.63% |

5. The policy at MSCH is to transfer patients to nursing homes whenever possible. According to the deposition testimony of the treating physician, Westmeyer's condition never improved sufficiently to allow transfer to a nursing home. The primary intent of Westmeyer's care at MSCH was to improve his condition. The Court credits the testimony of the treating physician, Dr. Boonme Enkvetchakul.

6. The charges for Westmeyer's care at St. Luke's total nearly $200,000.00. Payment for these charges is not at issue. MSCH has submitted a claim against the estate for medical services in the amount of $79,754.02. The total for Westmeyer's care at MSCH is $87,099.82. Golden Rule has paid $7,345.80 of this total, reducing the unpaid balance to $79,754.02.

7. On or about April 21, 1976, Congressional Life Insurance Company, the plaintiff's predecessor in interest, issued and delivered to the Agricultural and Live Stock Producers Insurance Trust a certain Group Health Insurance Policy No. 1862 pursuant to which Certificate No. 050437518 was issued to Walter P. Westmeyer, effective April 14, 1976. This policy contained a $15,000.00 deductible after which Golden Rule agreed to pay 100% of covered expenses up to $250,000.00.

8. The policy expressly excludes coverage for "expenses incurred while confined in a hospital or institution providing custodial care of a domiciliary nature, or expenses incurred while in a hospital or institution primarily for custodial or nursing services".

## B. CONCLUSIONS OF LAW

This Court has jurisdiction over this action under 28 U.S.C. §§ 1332 and 2201. Missouri law applies to this action. Regarding substantive questions, Missouri courts now apply the conflicts rules of the *Restatement (Second) on Conflict of Laws*, § 145. *Kennedy v. Dixon*, 439 S.W.2d 173, 181–86 (Mo. banc 1969). After consideration of the Restatement factors, the Court concludes that the law of the State of Missouri applies.

The sole issue presented is whether the medical expenses incurred by Westmeyer at MSCH are "primarily custodial or nursing services" within the exclusion provided by the Golden Rule policy. As Golden Rule argues, the policy excludes coverage if expenses for custodial and nursing services exceed 50% of the total charges. In Westmeyer's case, the charges for custodial and nursing services represent over 72% of the total charges at MSCH. *See Findings of Fact No.* 4. Therefore, the plaintiff concludes the expenses were primarily for custodial or nursing services.

The defendant estate admits that Westmeyer received some custodial or nursing care but argues that this fact does not preclude coverage. As the defendant estate argues, Westmeyer went to MSCH for specialized care designed to improve his condition. *See Findings of Fact No. 5.* Therefore, the primary intent or purpose of his stay at MSCH was not for custodial or nursing services.

In Missouri, the rules for construing the terms of an insurance policy are well-established. A court must construe the policy consistent with the apparent intent and objectives of the party. *Hrebec v. Aetna Life Insurance Co.*, 603 S.W.2d 666, 671 (Mo.Ct. App.1980) (Gunn, J.) (citing *State Farm Mut. Auto. Ins. Co. v. Thomas*, 549 S.W.2d 616 (Mo.Ct.App.1977)). Plain and unambiguous language must be given its plain meaning. *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir.1981). However, if the policy language is ambiguous, the ambiguities are resolved in favor of the insured, particularly when the ambiguities concern an exclusion from coverage. *Id.; Bellamy v. Pacific Mutual Life Ins. Co.*, 651 S.W.2d 490, 495–96 (Mo. banc 1983). Thus, as an initial matter the Court must determine whether the exclusion relied upon by the plaintiff is ambiguous.

In the instant case, three words in the exclusion clause are critical: custodial, nursing, and primarily. Though the policy does not define these terms and the parties

did not introduce extrinsic documents, industry practice, or evidence of bargaining to aid in defining these terms, the Court concludes that the terms "custodial" and "nursing" are unambiguous and must be given their plain meaning.

Regarding "custodial", the parties agree that the term is defined in Missouri law by *Hrebec*. In *Hrebec*, the insured suffered a massive stroke, leaving her in a comatose state. After an initial hospital stay, the insured was transferred, first, to the extended care facility at St. Louis County Hospital and, after some improvement, to a nursing home. There, the insured required a catheter, a nasal-gastric tube, prescribed medication, and other incidental care. The insured was visited by a physician at least monthly.

The policy at issue in *Hrebec* excluded charges for custodial care, which was defined as "care comprised of services and supplies, including room and board and other institutional services, which are provided to an individual, whether disabled or not, primarily to assist him in the activities of daily living." *Hrebec*, 603 S.W.2d at 669. Finding this definition ambiguous, the *Hrebec* court looked to the attempts made by federal courts to define custodial care under the Social Security Act. In particular, the *Hrebec* court adopted and applied the definition set out by *Hayner v. Weinberger*, 382 F.Supp. 762, 766 (E.D.N.Y. 1974); to-wit, custodial care connotes "a level of routine maintenance or supportive care which need not be provided in an institutional setting by skilled professional personnel." *Hrebec*, 603 S.W.2d at 672. The parties agree upon this definition of custodial care, and the testifying experts classified the various services provided to Westmeyer according to this definition.

Similarly, the Golden Rule policy also does not define "nursing care"; however, the term clearly refers to services provided by licensed nurses.

The third important word in the exclusion clause—"primarily"—is also not defined. However, unlike "custodial" and "nursing", a definition is neither obvious nor agreed upon by the parties.[2] As Golden Rule argues, the use of the word "primarily" excludes coverage if custodial and nursing services constitute over 50% of the total charges. The plaintiff relies upon the calculation set out in *Findings of Fact No. 4*. The defendant did not substantially contest these calculations. Rather, the defendant challenged the theory upon which the plaintiff based its calculations. As the defendant argues, the word "primarily" concerns not the cost of the services but the purpose or intent of the services. Under the defendant's construction, the Court must inquire whether the care was intended primarily as custodial or nursing care.

As the arguments of the parties demonstrate, the language of the exclusion clause is ambiguous. In particular, the use of the word "primarily" is capable of sustaining at least two different meanings. Both of these meanings are rational and reasonable. Yet, based on the record in this case, neither meaning may claim preeminence. Thus, the word "primarily" in the context of the exclusion clause is ambiguous.

The parties do not disagree that "primarily" is a synonym for chiefly or principally. Nor do the parties disagree regarding the broad purpose of the clause, which is intended to distinguish between the patient seeking treatment for an illness or injury covered by the policy and the lingering patient, who may no longer benefit from the more extensive and expensive services

---

**2.** Conceivably, "primarily" could modify "hospital or institution" within the clause. Under this construction, the clause would exclude coverage for expenses incurred at institutions which primarily provide custodial or nursing care, for example, nursing homes. Neither party argues for this construction, and the Court rejects it as a proper construction of the clause. The construction discussed in the main text is consistent with an intent to exclude coverage for certain services regardless of where provided, rather than to exclude certain institutions regardless of the services rendered. The first clause of the exclusion accomplishes the latter result by excluding any "expenses incurred in a hospital providing custodial care of a domiciliary nature, . . ."

available in a hospital and may require only the level of services available in a nursing home. Rather, the parties disagree over how much custodial care a patient may receive before coverage is excluded by the clause.

Typically, hospital patients do not receive exclusively custodial or non-custodial care. Some custodial services must be provided to patients clearly intended to be covered by their health insurance policy. For example, in the instant case, Westmeyer received some custodial care during his stay at St. Luke's, even though he was admitted for life-saving diagnostic and surgical procedures. *See Findings of Fact No.* 2. Likewise, even patients permanently confined to a nursing home will occasionally receive doctor visits and other non-custodial services. Thus, an exclusion clause must draw a line between such patients. To this end, some exclusion clauses place additional conditions upon the exclusion of custodial care.

In *Hrebec*, the policy qualified the exclusion of custodial care as follows:

> Room and board and skilled nursing services, when provided to an individual in a hospital or other institution, for which coverage is specifically provided under a Title of Article II, shall not be custodial care when such services must be combined with other necessary therapeutic services and supplies in accordance with generally accepted medical standards to establish a program of medical treatment which can reasonably be expected to contribute substantially to the improvement of the individual's medical condition.

*Hrebec,* 603 S.W.2d at 669. In light of this additional requirement, the *Hrebec* court denied coverage. The court found some non-custodial services were provided, but the court concluded that the patient was not "under a program of medical treatment expected to improve her medical condition." *Hrebec,* 603 S.W.2d at 674. Construing a similarly qualified clause, the court in *Young v. Equitable Life Assurance Soc.,* 350 Pa.Super. 247, 504 A.2d 339, (1986), found the patient's treatment was intended

to improve her condition and, therefore, not within a similar policy exclusion. Thus, under these policies, a patient receiving both custodial and non-custodial care will not be denied coverage unless the care is not intended to improve the patient's condition.

■ The Golden Rule policy does not rely upon distinctions appearing in the medical and legal literature, such as acute/chronic, hospital/nursing home, or active/passive. Therefore, contrary to the suggestions of the parties, this Court will not read these distinctions into the policy through the word "primarily". The Golden Rule policy relies solely upon the word "primarily" to distinguish between patients. The policy does not provide examples, guiding principles, or factors to consider in making this distinction. Thus, this Court finds it difficult to give content to the word "primarily". Essentially, the drafter of the instant exclusion clause requires the word "primarily" to bear a burden which it cannot sustain. The distinction which the policy attempts to make is a subtle one, not easily reduced to one or a few words. The result is an ambiguous exclusion clause. Accordingly, the Court should resolve such ambiguity in favor of the insured.

Having concluded that the policy is ambiguous, the Court must proceed to apply a favorable construction of the clause to the instant facts. Under a favorable construction of the exclusion clause, the fact that the greater percentage of charges were for custodial services is not dispositive. The amount of custodial or nursing care is one factor to consider; however, the Court must also attempt to determine the primary purpose or intent of the care. In other words, the Court must evaluate the medical care both quantitatively and qualitatively.

In this case, the fact that the greater percentage of charges at MSCH were for custodial or nursing care weighs in favor of the plaintiff. Other facts favor the defendant. Westmeyer was transferred from St. Luke's because he no longer required acute care or a ventilator and because his

condition had stabilized. *See Findings of Facts Nos.* 1, 2, & 3. Westmeyer was sent to MSCH because he required specialized respiratory care. *See Findings of Fact No.* 2. In addition to this specialized care, Westmeyer required a feeding tube and catheter. *See Findings of Fact No.* 3. While at MSCH, he was visited almost daily by physicians and required frequent suctioning of his tracheostomy and monitoring for infections. *See Findings of Fact No.* 3. Despite the policy of MSCH to transfer patients to nursing homes as soon as their condition allows, Westmeyer was never transferred from MSCH. *See Findings of Fact No.* 3. The care provided by MSCH was intended to improve Westmeyer's condition. *See Findings of Fact No.* 5. Based upon a weighing of these facts, this Court concludes that Westmeyer's care was not "primarily custodial or nursing".

This Court recognizes the inherent problems faced by drafters of exclusion clauses such as the one at issue. Nevertheless, in the interests of fairness and predictability, the burden must be upon the drafter to clarify such exclusions. Therefore, this Court denies the plaintiff a declaration of no coverage. In addition, the plaintiff is denied recovery of the sums paid to MSCH for the care of Walter P. Westmeyer. Judgment is entered for the defendant upon the plaintiff's complaint.