**INDEPENDENT OIL COMPOUNDERS ASSOCIATION, Plaintiff-Appellant,**

v.

**DEPARTMENT OF ENERGY, Charles W. Duncan, Jr., Secretary, Department of Energy, Economic Regulatory Administration, Department of Energy, and Hazel R. Rollins, Administrator, Economic Regulatory Administration, Department of Energy, Defendants-Appellees.**

**No. DC–83.**

Temporary Emergency Court of Appeals.

Argued March 17, 1981.

Decided May 26, 1981.

Carol T. Crawford, Collier, Shannon, Rill & Scott, Washington, D. C., with whom James F. Rill and William W. Scott, Washington, D. C., were on brief, for plaintiff-appellant.

Floyd I. Robinson, Office of Gen. Counsel, Dept. of Energy, Washington, D. C., with whom Larry P. Ellsworth, Deputy Asst. Gen. Counsel and Charles F. C. Ruff, U. S. Atty. and Dennis Dutterer, Asst. U. S. Atty., Washington, D. C., were on brief, for defendants-appellees.

Before LARSON, BONSAL and PECK, Judges.

BONSAL, Judge.

The Independent Oil Compounders Association ("IOCA") appeals from an order of the United States District Court for the District of Columbia denying its motion for summary judgment and granting the motion of the Department of Energy ("DOE") for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The district court upheld a ruling of DOE that during the period from August 19, 1973 until April 2, 1974

("the relevant period"), the petroleum-based lubricating oils and greases sold by members of IOCA were "covered products" under the Mandatory Petroleum Price Regulations ("the price regulations"). We affirm.

IOCA is a trade association representing independent firms which purchase, blend, compound, refine and resell finished petroleum lubricants. Lubricants sold by these firms include a variety of oils and greases which are produced through blending and compounding of purchased mineral, animal or vegetable materials, including petroleum base lubricating oils. These lubricant products include brake and transmission fluids and rust-arresting compounds. Members of IOCA purchase from refiners the base oil stocks which they utilize in the blending process.

On July 7, 1976, IOCA filed with the General Counsel of DOE a Request for Interpretation as to whether IOCA members were refiners as provided in Subpart E of the price regulations or reseller-retailers as provided in Subpart F. Thereafter, the General Counsel issued two Interpretations. In Interpretation 1977–50, issued on December 21, 1977, the General Counsel ruled that IOCA members were subject to the price regulations prior to April 3, 1974, and were not exempt, as IOCA had contended.* Following an appeal by IOCA, on February 13, 1979 the Office of Hearings and Appeals of DOE affirmed the General Counsel.

IOCA, contending that DOE was without authority to regulate the prices of the petroleum-based lubricating oils and greases sold by its members during the relevant period, instituted this action in the district court.

IOCA contends that the oils and greases produced by its members during the relevant period were not "covered products" under the price regulations. On August 19, 1973, the Cost of Living Council ("CLC"), to which the President had delegated his authority to issue price regulations, promul-

* In Interpretation 1978–33M, the General Counsel ruled that IOCA members were subject to the provisions of both Subpart E and Subpart F.

gated the "Phase IV" petroleum price regulations. 6 C.F.R. §§ 150.351 *et seq.,* 38 Fed.Reg. 22536 (Aug. 22, 1973). The Phase IV regulations defined a "covered product" as follows:

> "Covered product" means a product described in the 1972 edition, Standard Industrial Classification Manual, Industry Code 1311 (except natural gas), 1321, or 2911." *Ibid.*

On November 27, 1973, the Emergency Petroleum Allocation Act ("EPAA") became effective, and the President established the Federal Energy Office ("FEO") to administer the price regulations applicable to the petroleum industry. The CLC definition of "covered products" was adopted without change. (10 C.F.R. § 212.31)

The relevant period during which, DOE contends, IOCA members manufactured "covered products" ended on April 2, 1974, because on April 3, 1974, the FEO amended the definition of "covered products" to exclude any reference to the Standard Industrial Classification Manual ("SICM"). The new definition provided:

> "Covered products" means crude oil, residual fuel oil and refined petroleum products. 39 Fed.Reg. 12353

IOCA did not contest the applicability of the price regulations to sales by its members on or after April 3, 1974.

The Standard Industrial Classification Manual ("SICM"), 1972 edition, which was used in defining "covered products" during the relevant period, was prepared and published by the Executive Office of the President, Office of Management and Budget. The SICM defines industries "in accordance with the composition and structure of the economy." It was developed for use in the classification of establishments by the type of activity in which they were engaged. The SICM assigns to each industry an industry code based on its primary activity. Industries are, in turn, grouped, with groups having similar characteristics listed under "major group" headings. Thus, Industry Code No. 2911, "Petroleum Refining," is listed under Major Group 29, "Petroleum Refining and Related Industries."

During the relevant period, Section 212.-31 defined a "covered product" as any "product described in" Industry Codes 1311, 1321 and 2911. Industry Code 2911 provides:

> Establishments primarily engaged in producing gasoline, kerosene, distillate fuel oils, residual fuel oils, lubricants and other products from crude petroleum and its fractionation products, through straight distillation of crude oil, redistillation of unfinished petroleum derivatives, cracking or other processes. Establishments primarily engaged in producing natural gasoline from natural gas are classified in mining industries. Those manufacturing lubricating oils and greases by blending and compounding purchased material are included in Industry 2992. Establishments primarily re-refining used lubricating oils are classified in Industry 2992.
>
> Acid oil
> Alkylates
> Aromatic chemicals, made in petroleum refineries
> Asphalt and asphaltic materials: liquid and solid—produced in refineries
> Benzene, produced in petroleum refineries
> Benzol, produced in petroleum refineries
> Butadiene, from petroleum
> Coke, petroleum: produced in petroleum refineries
> Fractionation products of crude petroleum
> Gas, refinery or still oil: produced in petroleum refineries
> Gases, liquefied petroleum
> Gasoline blending plants, except natural gasoline
> Greases: lubricating produced in petroleum refineries
> Hydrocarbon fluid, made in petroleum refineries
> Jet fuels
> Kerosene
> Mineral jelly, produced in petroleum refineries

Mineral oils, natural

Mineral waxes, natural

Naphtha, produced in petroleum refineries

Naphthenic acids

Oils: fuel, lubricating, and illuminating—produced in petroleum refineries

Oils, partly refined: sold for rerunning—produced in refineries

Paraffin wax, produced in petroleum refineries

Petrolatums, nonmedicinal

Petroleum refining

Road materials, bituminous: produced in petroleum refineries

Road oils, produced in petroleum refineries

Solvents, produced in petroleum refineries

Tar or residuum, produced in petroleum refineries

IOCA contends that only lubricating oils and greases produced in petroleum refineries are "covered products" under the price regulations in effect during the relevant period. IOCA argues that since its members are not refiners, Industry Code 2911 does not describe their products. On the contrary, it argues, only Industry Code 2992 describes the products manufactured by its members. Industry Code 2992 provides:

> Establishments primarily engaged in blending, compounding, and re-refining lubricating oils and greases from purchased mineral, animal, and vegetable materials. Petroleum refineries engaged in the production of lubricating oils and greases are classified in Industry 2911.
>
> Brake fluid, hydraulic
>
> Cutting oils, blending and compounding from purchased material
>
> Lubricating greases and oils, not made in petroleum refineries
>
> Lubricating oils, re-refining
>
> Oils and greases, blending and compounding from purchased materials
>
> Rust arresting compounds, animal and vegetable oil base
>
> Transmission fluid, hydramatic

IOCA contends that Industry Codes 2911 and 2992 are mutually exclusive, since the establishments described in these sections have distinctive and disparate characteristics.

Among the listed products in Industry Code 2911 are "Greases: lubricating, produced in petroleum refineries," "Oils: fuel, lubricating, and illuminating—produced in petroleum refineries," and "Oils, partly refined: Sold for rerunning—produced in refineries." Industry Code 2992 lists, among other products, "lubricating grease & oils, not made in petroleum refineries" and "lubricating oils, re-refining." The only apparent distinction between these products, as described, is their place of manufacture. Such a distinction is understandably found in the SICM, which was drafted to provide a uniform system of categorizing business activities for purposes of gathering statistical data. For our purposes, however, it is the product, not the establishment, which is important, since the price regulations were promulgated so that sales of crude oil and crude oil products might be regulated. Lubricating oils and greases listed in Industrial Code 2911 were manufactured by IOCA members during the relevant period, and are therefore "covered products" under the plain meaning of Section 212.31 of the price regulations.

It is true that the products listed in Industrial Code 2911 which are mentioned above are described as "produced in petroleum refineries." However, the definition of "covered product" in Section 212.31 makes no reference to the place of manufacture, which is therefore not a consideration in determining whether the product is "covered." The CLC, pursuant to the ESA, did on occasion during the relevant period make explicit reference to "establishments" in its regulations. Thus, in promulgating an exemption for the automobile manufacturing industry, the CLC specified that the exemption was applicable only to "establishments" classified in Section 3711. 38 Fed.Reg. 34313–14. The CLC might have specified in Section 212.31 that establishments were to be considered, but chose not to do so.

We therefore conclude that the petroleum-based oils and greases manufactured by members of IOCA during the relevant period are "covered products" under Section 212.31 of the price regulations, notwithstanding the reference to Section 2911 of the SICM.

We note that DOE's interpretation of the definition of covered products, if reasonable, is entitled to deference. *United States v. Larinoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48; *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Here, DOE's interpretation of Section 212.31 of the price regulations was not only reasonable, but also in agreement with the plain meaning of the regulation. Moreover, the interpretation effectuates congressional intent as expressed in the ESA and the EPAA. In our decision *Getty Oil Company v. DOE*, Em.App., 581 F.2d 838 (1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 840, 59 L.Ed.2d 36 (1979), we noted the importance of a "libera[l]" reading of the price regulations in view of their formulation under exigent circumstances and rejected an argument, similar to that here raised by IOCA, that certain solvents were exempt from the coverage of the EPAA. Rather, we held that the regulation in question "must be construed consistently with [the] statutory duty" of the Federal Energy Administration to regulate the price and allocation of these solvents. *Id.* at 842.

Certain provisions in the ESA and EPAA specify that the price regulations promulgated thereunder apply to all petroleum products sold in the United States. Thus, the EPAA directed the President to "promulgate a regulation providing for the mandatory allocation of crude oil, residual fuel oil, and each refined petroleum product, in amounts . . . and at prices specified in (or determined in a manner prescribed by) such regulation. Except as provided in Subsection (e), such regulation shall apply to all crude oil, residual fuel oil, and refined petroleum proucts produced in or imported into the United States." 15 U.S.C. § 753(a). Indeed, under Section 4(g) of the EPAA, 15 U.S.C. § 753(g), a petroleum product may be decontrolled only after Presidential approval and congressional authorization.

The legislative purpose evident in these provisions supports our conclusion that the petroleum-based products sold by IOCA members during the relevant period were "covered products" under Section 212.31. Indeed, the contrary conclusion would produce an incongruous regulatory result, since lubricants produced by petroleum refiners would be "covered products," while the same products, if produced by IOCA members, would enjoy exemptions from the price regulations.

The judgment of the district court is affirmed.