667 F.2d 664
 PETROLITE CORPORATION, BARECO DIVISION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
and
Cities Service Gas Company, Intervenor.
AMERICAN HARDBOARD ASSOCIATION and Superwood Corporation, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 81-1214, 81-1456.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1981.
Decided Dec. 15, 1981.
 
 1
 C. Frank Reifsnyder, argued, Richard C. Green, Hogan & Hartson, Washington, D.C., for Petrolite Corp., Bareco Div.; C. Scott Letcher, Tulsa, Okl., of counsel.
 
 
 2
 Nicholas W. Fels, argued, Jane H. Chalmers, Covington & Burling, Washington, D.C., William C. Ives, Robert A. Creamer, Keck, Mahin & Cate, Chicago, Ill., for American Hardboard Ass'n and Superwood Corp.
 
 
 3
 Jerome Nelson, Acting Gen. Counsel, Jerome M. Feit, Deputy Sol., Barbara J. Weller, Asst. Sol., argued, Washington, D.C., for respondent Federal Energy Regulatory Commission.
 
 
 4
 Before STEPHENSON and McMILLIAN, Circuit Judges, and LARSON,* Senior District Judge.
 
 
 5
 LARSON, Senior District Judge.
 
 
 6
 Petitioners in this consolidated[1] proceeding seek appeal from orders of the Federal Energy Regulatory Commission (FERC) concerning the application of the agricultural exemption from the incremental pricing surcharges of the Natural Gas Policy Act of 1978 (NGPA), Pub.L. 95-621, 92 Stat. 3350 (1978), 15 U.S.C. §§ 3301, et seq. (Supp. III 1979). Petitioners applied to the Commission for rehearing of FERC Order No. 114, 45 Fed.Reg. 82915 (1980) pursuant to Section 506 of the Act, 15 U.S.C. § 3416(a)(2), but in FERC Order No. 114-A, 46 Fed.Reg. 11812 (1981), the Commission denied rehearing of its findings that food-grade waxes are only exempt from incremental pricing when they are used for entire food containers and that hardboard is only exempt prospectively. We affirm.
 
 I. Introduction
 
 7
 Congress enacted the NGPA as a means of phasing in the deregulation of the wellhead price of natural gas. Title II of the Act sets forth a scheme of "incremental pricing" to channel the immediate impact of deregulation to large industrial users of natural gas and to provide relief for residential, small commercial, and agricultural users. The Act imposes an "incremental pricing surcharge" on industrial users based on the acquisition costs paid by interstate natural gas pipelines. The Act specifies a number of uses of natural gas that are exempt from surcharges, including "agricultural use" in Section 206, 15 U.S.C. § 3346(b)(3):
 
 
 8
 Agricultural use defined.-For purposes of this subsection, the term "agricultural use", when used with respect to natural gas, means the use of natural gas to the extent such use is-
 
 
 9
 (A) for agricultural production, natural fiber production, natural fiber processing, food processing, food quality maintenance, irrigation pumping, or crop drying; or
 
 
 10
 (B) as a process fuel or feedstock in the production of fertilizer, agricultural chemicals, animal feed, or food.
 
 
 11
 FERC has adopted detailed rules on the scope of this agricultural exemption, and these rules are the subject of this appeal.
 
 
 12
 Petitioners seek, in the first instance, expansion of the Commission's rules on the agricultural exemption, and, in the second instance, retroactive application of the exemption. Petitioner Petrolite Corporation owns and operates a plant in Oklahoma whose sole function is the production of food-grade microcrystalline and synthetic paraffin waxes that are used in food packaging. In Order No. 114 Petrolite won an exemption for production of food-grade waxes used as "entire food containers" (for example, the casings on certain cheeses), but the Commission denied exemption for waxes used as a "secondary input into the manufacture of food packaging" (primarily waxes used as coatings or glazings on containers made of paper and other materials). Petitioner American Hardboard Association (AHA) is a trade association representing the hardboard industry, and petitioner Superwood Corporation, a member of AHA, is a manufacturer of hardboard. AHA won an exemption for gas used in manufacturing hardboard in Order No. 114, but the exemption only applied prospectively, with the earliest date that manufacturers of hardboard could take advantage of it being January 1, 1981. AHA and Superwood sought retroactive relief for the one year period from the onset of incremental pricing on January 1, 1980, to January 1, 1981, but FERC denied petitioners' request.
 
 II. Standard of Review
 
 13
 In reviewing FERC's rules on the scope of the agricultural exemption, this Court must accord great weight to the Commission's judgment. We are mindful of the rule set forth by Congress in the Administrative Procedure Act (APA), Pub.L.No. 89-554, 80 Stat. 393 (1966), requiring that "(t)he reviewing court shall ... hold unlawful and set aside agency action ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706 (1976). We are also aware, however, that Congress granted the Commission a significant measure of discretionary authority under the NGPA. Ohio Ass'n of Community Action Agencies v. Federal Energy Regulatory Comm'n, 654 F.2d 811, 822 (D.C.Cir.1981). We will discuss the role Congress provided for the Commission at greater length below, but, for now, suffice it to say that the complexity of the NGPA requires that the Commission have discretion to apply its expertise and, as a corollary, that the reviewing court grant deference to FERC. Ecee, Inc. v. Federal Energy Regulatory Comm'n, 645 F.2d 339, 360 (5th Cir. 1981). We must uphold the Commission so long as the rules it has promulgated are within the broad grant of congressional authority and are rational. See, e.g., United States v. Allegheny-Ludlum Steel Corp., 406 U.S. 742, 749, 92 S.Ct. 1941, 1946, 1947, 32 L.Ed.2d 453 (1972); Ohio Ass'n of Community Action Agencies v. Federal Energy Regulatory Comm'n, 654 F.2d at 825; Murphy Oil Corp. v. Hickel, 439 F.2d 417, 422 (8th Cir. 1971); cf. Independent Oil Compounders Ass'n v. Department of Energy, 650 F.2d 1230, 1234 (Em.App.1981) (agency interpretation of regulation entitled to deference if reasonable).
 
 III. Food-Grade Waxes
 
 14
 The Commission's rule for the exemption of food-grade waxes meets this standard. Petrolite argues that, by adopting the primary/secondary input distinction, FERC has transformed the statutory exemption for gas used in "food quality maintenance," 15 U.S.C. § 3346(b)(3), into an exemption for gas used in the manufacture of an "entire food package." Petrolite maintains that the Commission's refusal to exempt waxes used in the coating of packages violates the Act because such waxes are clearly used in "food quality maintenance." Petrolite points out that the primary/secondary input test was developed by the Secretary of Agriculture in implementing Section 401 of the NGPA, 15 U.S.C. § 3391(f)(1). The Secretary's task under this section was to determine which agricultural uses should be considered "essential" in the event of a curtailment of natural gas supply, and Petrolite argues that this standard is too stringent for determining the scope of the agricultural exemption under Section 206, 15 U.S.C. § 3346(b)(3). Petrolite admits that it is necessary to draw the line at some point,-surely it would be going too far to exempt gas used in the manufacture of all steel because some of it will eventually be turned into metal food cans-but petitioner argues that the preferable approach would be to consider the intended use and function of a product at the manufacturing stage, rather than whether the product is a primary or secondary input into food packages.
 
 
 15
 In essence, Petrolite is arguing that its test would be more rational than the one adopted by the Commission. We are satisfied, however, that the primary/secondary test is at least minimally rational. Given the need for the Commission to draw the line somewhere in the production of food packages, the step where the actual food package is produced as opposed to materials used in packages is acceptable. It is irrelevant that Petrolite has come up with a test it believes to be marginally better when the question for the Court is simply whether the Commission's action is within the parameters of the statute and is rational. Further, the Court seriously doubts the desirability of Petrolite's alternative test. Determining the intended use of a packaging product at the manufacturing stage is apt to be difficult if not impossible in many cases and, in any event, is likely to entail high administrative costs. A large number of activities would be exempt under the Petrolite test, even those that are fairly remote from the production of products that serve a direct role in food quality maintenance. Considerations such as these lend credence to the judgment of FERC and reinforce our belief that deference to the expertise of the Commission is called for in its determination that only food-grade waxes used as entire containers should be included in the agricultural exemption to the NGPA.
 
 IV. Hardboard
 
 16
 Before turning to the merits of the question of whether the Commission should have exempted hardboard retroactively, we must address FERC's argument that petitioners AHA and Superwood failed to pursue the appropriate administrative remedies and that their appeal to this Court constitutes an impermissible collateral attack on the Commission's regulations.
 
 
 17
 The gist of the Commission's position is that it specified the procedure for obtaining an exemption in FERC Order No. 49, 44 Fed.Reg. 57726 (1979), and that, because petitioners did not request a rehearing on the prospective-only issue in response to Order No. 49, judicial review cannot now be had under Section 506 of the NGPA, 15 U.S.C. § 3416. In Order No. 49 the Commission defined the exempt agricultural uses, although it did not recognize an exemption for hardboard at that time. Facilities that qualified for an exemption were required to file affidavits certifying that they used gas for exempt purposes. Facilities that filed their affidavits prior to the commencement of incremental pricing on January 1, 1980, would receive the exemption from that date on. Facilities that filed subsequently would only receive the exemption from the first of the month following submission of affidavits. In FERC Order No. 49-A, 45 Fed.Reg. 767 (1980), the Commission added several exempt categories, but there was as yet no request to include hardboard. The Commission denied rehearing of Order No. 49-A, opened hearing on Order No. 114, and therein granted the exemption for hardboard. In Order No. 114 the Commission indicated that exemptions granted in that order would only have prospective effect. In their request for rehearing of Order No. 114, AHA and Superwood argued that the exemption for hardboard should be retroactive to January 1, 1980, but the Commission denied rehearing to Order No. 114-A.
 
 
 18
 The Commission is incorrect in maintaining that petitioners should have raised the issue of retroactivity in response to Order No. 49 if they desired judicial review of this matter. Order No. 49 set forth a procedure for individual users to take advantage of the exemptions as then defined by the Commission. Order No. 49 did not address the issue of whether the exemption would be prospective or retroactive for users who gained exemption pursuant to a subsequent expansion of the exempt category. It is doubtful that petitioners could have obtained judicial review of Order No. 49 on this issue when the order did not address the problem and the exemption for hardboard was still pending. Now that the Commission has denied rehearing in Order No. 114-A on the issue of retroactivity, this petition for review is now in order under Section 506 of the NGPA, 15 U.S.C. § 3416.
 
 
 19
 The parties are agreed that if the order exempting hardboard is legislative, then it is proper for it to be prospective, whereas if the order is interpretative, then it should be given retroactive effect. The rationale for this distinction is that a commission or agency creates new law when it issues legislative rules, while it merely applies existing law when it issues interpretative rules. 1 K. Davis, Administrative Law Treatise § 5.09 (1958). Petitioners argue that FERC's definition of the exempt category is merely interpretative because the statute defines exempt agricultural uses and no additional rulemaking is authorized or required. They therefore conclude that the exemption should be retroactive. This analysis, however, is faulty.
 
 
 20
 An administrative entity must have congressional authority to make legislative rules. See Batterton v. Francis, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977); Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). Here, Congress gave the Commission power under Section 501 of the Act, 15 U.S.C. § 3411(a), "to proscribe, issue, amend, and rescind such rules and orders as it may find necessary or appropriate to carry out its functions under this chapter." In Section 201 of the Act, 15 U.S.C. § 3341(a), Congress explicitly required the Commission to promulgate rules within twelve months of the enactment of the NGPA for the implementation of incremental pricing surcharges. Also in Section 501 of the Act, 15 U.S.C. § 3411(b), Congress gave the Commission power to define by rule technical terms used in the chapter on incremental pricing so long as the rules are consistent with the definitions in the Act.
 
 
 21
 These provisions reflect Congress's intent to provide the Commission with an active role in administering a highly complex piece of legislation. As the conference committee noted in its report:
 
 
 22
 The conference agreement requires the Commission to prescribe a rule for implementing incremental pricing. Each pipeline would be required under the rule to place certain portions of its acquisition costs of natural gas into a special incremental pricing account for pass-through to incrementally priced users.
 
 
 23
 The conference agreement provides a statutory exemption from (the) rules for any residence, school, hospital, or similar institution, for any electric utility, and for certain industrial co-generators. In addition, other "small" industrial boiler fuel users and "agricultural" users, as defined in sec. 206, are excluded from both the first rule and the amendment.
 
 
 24
 The conferees recognize that implementation of this program will be complex. The conference agreement provides for implementation of incremental pricing by rule, which is intended to give the Commission the requisite discretion to deal with difficulties that may arise.
 
 
 25
 H.R.Rep.No.95-1752, 95th Cong., 2d Sess., 94-95, reprinted in (1978) U.S.Code Cong. & Ad.News 8800, 8983, 9011-12.
 
 
 26
 Petitioners all too glibly assert that the scope of the agricultural exemption in Section 206 of the Act, 15 U.S.C. § 3346(b)(3), is clear on its face and therefore that it will be self-executing until such time as the Commission adopts by rule a permanent exemption under 15 U.S.C. § 3346(b)(2).[2] This analysis wrongly de-emphasizes the highly generalized nature of the definition of agricultural use in the Act and fails to recognize the role that Congress envisioned for FERC. Legislative rules were necessary for the effective implementation of the legislation, and the orders that are the subject of this appeal are legislative in character.
 
 
 27
 That these orders are legislative is also reflected in the Commission's use of APA notice and comment procedures under 5 U.S.C. § 553 for the promulgation of these rules. Interpretative rules are specifically exempted from notice and comment procedures under 5 U.S.C. § 553.
 
 
 28
 It may be that the Commission could have ordered a retroactive exemption, but, at any rate, this would have been a discretionary matter. See Transwestern Pipeline Co. v. Federal Energy Regulatory Comm'n, 626 F.2d 1266, 1271 (5th Cir. 1980), cert. denied, --- U.S. ----, 101 S.Ct. 2017, 68 L.Ed.2d 324, rehearing denied, --- U.S. ----, 101 S.Ct. 3128, 69 L.Ed.2d 985 (1981). The Commission has pointed out the potential hardship to other users of natural gas and the administrative burden in allowing the retroactive exemption that petitioners seek. Most significantly, the surcharges refunded to manufacturers of hardboard would have to be made up by other users of natural gas. Such considerations provide a sufficient reason for denying retroactive effect to the exemption. As the United States Court of Appeals for the Fifth Circuit noted in a somewhat different context:
 
 
 29
 We believe that the Commission acted within its discretion in making the effect of Order 566 prospective. See generally Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 201-204, 67 S.Ct. 1575, 1579-1581, 91 L.Ed. 1995 (1947); Retail, Wholesale and Department Store Union v. National Labor Relations Board, 466 F.2d 380, 389-90 (D.C.Cir.1972); Pacific Molasses Company v. Federal Trade Commission, 356 F.2d 386, 390 (5th Cir. 1966). The Commission could properly determine that an adverse affect (sic) on other parties could result from a retroactive application of the new definition. Coe v. Secretary of Health, Education and Welfare, 502 F.2d 1337, 1340 (4th Cir. 1974). Thus, as the Commission stated, Transwestern's claims must stand or fall under the rules as they stood prior to the amendment; it has no vested right to retroactivity.
 
 
 30
 Id.
 
 
 31
 Like petitioner Petrolite, AHA and Superwood have proposed an alternative policy that they believe would be preferable to that of the Commission. They argue that the asserted hardship and administrative burden of refunding surcharges would be insignificant because it would be possible for a natural gas utility to make a refund to a hardboard manufacturer and then treat that refund as an unrecovered, newly incurred gas acquisition cost to be recovered in future months. They claim that there would be no need under this alternative to recompute surcharges to be paid by other users for past months. As in the Petrolite appeal and for the reasons stated above, however, we find it appropriate to defer to the judgment of the Commission in rejecting the alternative petitioners have proposed.
 
 
 32
 The orders of the Commission are affirmed.
 
 
 
 *
 EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation
 
 
 [1]
 Petitioners American Hardboard Association and Superwood Corporation filed a petition for review of Federal Energy Regulatory Commission Order No. 114-A, 46 Fed.Reg. 11812 (1981), with the United States Court of Appeals for the Seventh Circuit. Petitioner Petrolite Corporation had already filed a petition for review of the same order in this Circuit. By order issued April 20, 1981, the petition of American Hardboard Association and Superwood Corporation was transferred to this Court pursuant to 28 U.S.C. § 2112(a) (1976). The petitions were subsequently consolidated for hearing
 
 
 [2]
 The Act exempts agricultural users from the surcharge in two stages. Initially, under Section 206, 15 U.S.C. § 3346(b)(1), all agricultural users are exempt. Section 206, 15 U.S.C. § 3346(b)(2) directs the Commission to adopt by May 1980 rules permanently exempting agricultural uses for which there is no "economically practicable ... or ... reasonably available" alternative fuel. After the adoption of such a permanent exemption only the uses within that category are to be exempt from incremental pricing surcharges. The Commission chose not to enact a permanent exemption, however, and instead on May 7, 1980, issued FERC Order No. 83, 45 Fed.Reg. 33601 (1980) which continued indefinitely the application of the interim exemption